Shoham J. Solouki (SBN 278538)
SOLOUKI SAVOY LLP
316 West 2nd Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 814-4940
Facsimile: (213) 814-2550
Email: shoham@soloukisavoy.com

*Attorneys for Merry Russitti Diaz,*
*Kater Perez and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Merry Russitti Diaz and Kater Perez, individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | Demand for Jury Trial |
| vs. | |
| Westco Chemicals, Inc.; Ezekiel "Alan" Zwillinger; and Steven Zwillinger, | |
| Defendants. | |

## INTRODUCTION

1. Merry Russitti Diaz and Kater Perez (collectively, "Plaintiffs") for themselves and on behalf of the Westco Chemicals Defined Benefit Pension Plan ("Pension Plan") bring this action against Westco Chemicals, Inc., Ezekiel "Alan" Zwillinger, and Steven Zwillinger (collectively, "Defendants") for violations of the Employee Retirement Income Security Act's, 29 U.S.C. §§ 1001-1461 ("ERISA") fiduciary duties of prudence and loyalty.

2. In or around 2005, Defendants received a large cash settlement award from a lawsuit involving anticompetitive business practices. Defendants wanted to avoid paying the anticipated hefty tax bill on the cash settlement award, so they created the Pension Plan and used the cash settlement award to initially fund the Pension Plan. Upon information and belief, Westco Chemicals to a deduction in the amount of the contributions against its income for federal income tax purposes.

3. Defendants, however, never intended for the Pension Plan to be a legitimate Pension Plan that provided meaningful retirement income to their employees, or to otherwise comply with existing laws and regulations that govern such plans. Rather, Defendants created and have since used the Pension Plan primarily to funnel the money in the Pension Plan to themselves and their relatives.

4. Indeed, Defendants kept the existence of the Pension Plan a secret from most of Westco Chemical's employees. Defendants did not design the Pension Plan to meet the non-discrimination rules or fund the Pension Plan as required by the Internal Revenue Service and ERISA. Defendants did not administer the Pension Plan as required by ERISA. Defendants did not provide Pension Plan participants with minimum benefits as required the Internal Revenue Service and ERISA.

5. Defendants' wide-ranging and willful failures to comply with the Internal Revenue Code and ERISA has resulted in clear operational failures in the administration of the Pension Plan and created a *serious jeopardy* of disqualification by the Internal Revenue Service.

6. If the Pension Plan is disqualified, the Pension Plan would effectively terminate and all of its participants and beneficiaries would lose the tax-exempt status of the retirement benefits in the Pension Plan, which would result in serious adverse tax consequences to the Pension Plan, participants, beneficiaries and Westco Chemical.

7.  Any person who willfully violates ERISA may be civilly held liable for all the plan's losses *and* prosecuted criminally and "upon conviction be fined not more than $100,000 or imprisoned not more than 10 years, or both." 29 U.SC. § 1131.

8.  Additionally, Defendants failure to properly administer the Pension Plan has caused Plaintiffs and all similarly situated Pension Plan participants and beneficiaries to wrongfully lose important pension benefits (money) that they should have been paid in the past and will not receive in the future unless this case moves forward.

**JURISDICTION AND VENUE**

9.  Plaintiffs bring this action pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and (3). This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

10. Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b), because the Defendants reside or may be found in this District and because the Plan is administered in this District. Venue is also proper in this District under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

**PARTIES**

11. Plaintiff Merry Russitti Diaz resides in Paso Robles, California. Diaz is now, and at all relevant times, has been a participant in the Pension Plan. Diaz recently retired from Westco Chemicals after many years of service. While she was employed with Westco Chemicals she did not receive a summary plan description, summary annual reports, statement of accrued benefit, or any specific information about the Pension Plan or her rights to benefits. Defendants sought to conceal the existence of the Pension Plan from Diaz. Diaz recently requested Defendants to begin paying her pension benefits. In response to her request, Defendants began paying Diaz approximately $100 per month in pension benefits. But Defendants did not provide

Diaz with any explanation of how her pension benefits were calculated, or any similar documents. Had Defendants complied with existing Internal Revenue Code and ERISA minimum benefit requirements, Diaz would have received a much larger pension benefit than she is *now* receiving. Additionally, had Defendants complied with existing Internal Revenue Code and ERISA requirements, Diaz would receive much larger pension benefits in the *future*. Diaz has suffered actual damages because Defendants did not fund her pension benefits as they were required to under the Internal Revenue Code and ERISA and thus, Diaz has sustained actual damages and will continue to sustain actual damages due to Defendants' failures described herein. According to the SPD, Diaz's pension benefit is only one basis point of her AMC, which is virtually nothing. If she receives a benefit of any other amount, she and all other Pension Plan participants and beneficiaries are in danger of having the entire Plan disqualified because the Pension Plan documents are not being followed as required by existing law.

12. Plaintiff Kater Perez resides in Rancho Cucamonga, California. Perez was married to Marco Jesus Perez, until his passing on November 7, 2017. Marco Jesus Perez was employed by Westco Chemicals from August 23, 2004 to May 5, 2017. He was a vested participant in the Pension Plan. Pursuant to the SPD and as required by ERISA, Kater Perez was supposed to receive a death benefit from the Pension Plan after her husband passed. However, Kater Perez did not receive any death benefit. Moreover, she received no communications from Defendants whatsoever. She was and until recently remained unaware that she was a beneficiary in the Pension Plan. She has been wholly deprived of all rights as a beneficiary of the Plan. Perez has been damaged by Defendants in ways that cannot be quantified. After her husband's passing, she was forced to borrow money to bury her husband. And she was left to care for her daughter without the financial necessary resources to meet basic needs of her child. Had Defendants satisfied their ERISA fiduciary obligations to Kater Perez and

1   her deceased husband, she and her daughter would not have suffered the way they did.

2   Defendants' breach of ERISA fiduciary duties caused Kater Perez to suffer actual

3   damages. Kater Perez recently received a payment from Defendants, but she was not

4   provided with any information about how the payment was calculated and it was only

5   received after Defendants became aware that she was a likely Plaintiff in this lawsuit.

6   And because Defendants continue to breach their ERISA fiduciary duties by failing to

7   pay Pension Plan participants and beneficiaries the legally required minimum pension

8   benefits, Kater Perez will continue to suffer damages due to Defendants' failures

9   described herein.

10       13. Defendant Westco Chemicals is a California corporation with its principal

11   place of business in the City of North Hollywood, California. Westco Chemicals is a

12   privately held family business. Westco is the Pension Plan sponsor and designated as

13   the Plan Administrator and thus is a "named fiduciary" under 29 U.S.C. §1002(16)(B)

14   who has authority to control and manage the administration of the Pension Plan.

15   Westco Chemicals also possesses or exercises certain types of authority, responsibility,

16   or control over the Pension Plan and thus is a functional fiduciary under 29 U.S.C.

17   §1002(21)(A). Westco Chemicals is also a party in interest to the Pension Plan under

18   29 U.S.C. §1002(14).

19       14. Defendant Ezekiel "Alan" Zwillinger is the current (or former) President of

20   Westco Chemicals. Alan Zwillinger resides in Calabasas, California. He has been the

21   control person for Westco Chemicals since the 1960's and is/was in control of the

22   creation and administration of the Pension Plan. Alan Zwillinger spurned hiring an

23   investment manager for the Pension Plan. Instead he designated himself and his son,

24   Steven Zwillinger, to be trustees for the Pension Plan and to make all the financial

25   decisions for the Pension Plan.  He together with his son kept absolute control over the

26   Pension Plan's assets. Accordingly, Alan Zwillinger is a "fiduciary" under 29 U.S.C.

27   §1102(a)(1), because he has authority to control and manage the administration of the

1   Pension Plan. Alan Zwillinger also possesses or exercises certain types of authority,

2   responsibility, or control over the Pension Plan and the investment of plan assets and

3   thus is a functional fiduciary under 29 U.S.C. §1002(21)(A). Alan Zwillinger is also a

4   party in interest to the Pension Plan under 29 U.S.C. §1002(14).

5       15. Defendant Steven Zwillinger is the son of Alan Zwillinger. Steven

6   Zwillinger resides in Encino, California. Steven Zwillinger is the second in command

7   at Westco Chemicals. However, over the past ten years, Steven Zwillinger has taken

8   more and more responsibility at Westco Chemicals as his father moves toward

9   retirement. Since at least 2013, Steven Zwillinger has signed the Pension Plan's form

10  5500 Department of Labor mandated disclosures as the "plan administrator" and as the

11  "employer or plan sponsor." Steven Zwillinger makes funding and disbursement

12  decisions for the Pension Plan and exercises control over the Pension Plan's assets.

13  Accordingly, Steven Zwillinger is a "fiduciary" under 29 U.S.C. § 1102(a)(1), because

14  he has authority to control and manage the administration of the Pension Plan. He is

15  also a trustee to the Pension Plan and is designated as such in a written Trust

16  Agreement, and as such possesses or exercises certain types of authority,

17  responsibility, or control over the Pension Plan and thus is a functional fiduciary under

18  29 U.S.C. § 1002(21)(A). He is also a party in interest to the Plan under 29 U.S.C. §

19  1002(14).

20      **<u>NATURE OF THE ACTION</u>**

21      16.  The Pension Plan is an "employee pension benefit plan" within the meaning

22  of 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of 29

23  U.S.C. § 1002(34).

24      17. The Pension Plan was created on October 1, 2005. After Defendants created

25  and initially funded the Pension Plan, Defendants became embroiled in a dispute for

26  unpaid attorney fees with their former lawyer. Upon information and belief,

27  Defendants settled the unpaid attorney fees dispute with money that had been placed in

1  trust for the Pension Plan and was supposed to be used for the sole and exclusive

2  benefit of providing pension benefits to Pension Plan participants and beneficiaries.

3      18. ERISA requires pension plan fiduciaries – the people who run plans – to

4  give plan participants in writing the most important facts they need to know about their

5  pension plans including plan rules, financial information, and documents on the

6  operation and management of the plan. Some of these facts must be provided to

7  participants regularly and automatically by the plan fiduciaries.

8      19. One of the most important documents pension plan participants are entitled

9  to receive automatically when becoming a participant of an ERISA covered pension

10 plan, or a beneficiary receiving benefits under such a plan, is a summary of the plan,

11 called the summary plan description or SPD. The plan administrator is legally

12 obligated to provide to participants the SPD. The SPD is an important document that

13 tells participants what the plan provides and how it operates. The SPD provides

14 information on when an employee can begin to participate in the plan, how service and

15 benefits are calculated, when benefits becomes vested, when and in what form benefits

16 are paid, and how to file a claim for benefits.

17     20. A copy of the Pension Plan's SPD is attached here as Exhibit 1. According

18 to the SPD, all Westco Chemicals employees over the age of 21 years, with a

19 minimum 12 months service in which they have 1000 hours of service for Westco

20 Chemicals are eligible to participate in Pension Plan and earn retirement benefits.

21     21. But Defendants failed to provide the SPD to their employees. The failure

22 was intentional and designed to conceal the existence of the Pension Plan from

23 Defendants' employees.

24     22. In addition to the SPD, Defendants are required to automatically give

25 Pension Plan participants a copy of the plan's summary annual report each year. This

26 is a summary of the annual financial report that most plans must file with the

27

1    Department of Labor. These reports are filed on government forms called the form
2    5500.

3         23. Defendants failed to provide summary annual reports to Pension Plan
4    participants and beneficiaries each year. Moreover, Defendants even failed to provide
5    the Department of Labor with these reports each year until years after the due date for
6    such reports.[1]

7         24. Defendants' willful concealment and failure to provide Plaintiffs, Pension
8    Plan participants, and beneficiaries – and even the Department of Labor with
9    mandatory disclosures enabled Defendants' ERISA breaches to go unnoticed by
10   Plaintiffs until shortly before this lawsuit was filed.

11        25. According to the Pension Plan's most recent Department of Labor 5500
12   disclosure for the fiscal year ending September 30, 2018, the Pension Plan had
13   $1,237,230, including a $200,000 "received (or receivable)"[2] as a company
14   contribution. The Pension Plan paid out Benefits of $205,000—to one retiree.[3]

15        26. In contrast, as of Oct. 1, 2011, the Pension Plan held $1,992,011 in assets,
16   and in the year following received no contributions, but for the first time, paid benefits
17   of $43,200. Oddly, Schedule SB to the Pension Plan's Annual Return indicates there
18   are no retirees receiving benefits.

19        27. The following year, no contributions were made, the Pension Plan earned
20   $37,753, and paid benefits of $93,834, leaving the Pension Plan with assets of
21   $1,890,506. As in the prior year, Schedule SB to the Pension Plan's 2012 Annual
22   Return indicates there are no retirees receiving benefits.

23        28. For the plan year ending September 30, 2014, the Pension Plan's assets

24

25   _____

[1] Pension Plan Annual Returns for the 2015, 2016 and 2017 plan years were all filed
26   on June 10, 2019.
[2] 2018 Annual Return of the Pension Plan on Form 5500-SF, Part III. Exh. 1.
27   [3] Exh. 1, Sch. SB, Section 3.

declined to $1,730,766 after earning $18,909 but paying out "deemed and/or corrective distributions" of $174,324. No contributions were made and once again, the Plan's actuary reported that there were no retirees or beneficiaries receiving benefits.

29. For the plan year ending September 30, 2015 only $1,584,416 of assets remained under management at the end of the fiscal year, after payment of benefits of $174,324, the exact amount paid out the previous year as "deemed and/or corrective distributions." Again, the Plan's actuary reports state there are no retired participants and beneficiaries receiving benefits. So it appears, based on the Pension Plan's Department of Labor disclosures that there is money leaving the Pension Plan that has not been accounted for by the Pension Plan's actuary and is not been deemed as actually paid to a legitimate retired Pension Plan participant or beneficiary. This is further evidence of ERISA and Internal Revenue Code violations. Upon information and belief, the money was wrongly taken by Defendants.

30. For the plan year ending September 30, 2016, the Pension Plan paid benefits of $228,355, earned $30,954 in investment income, and received employer contributions of $47,000, reducing Pension Plan assets to $1,439,551. For the first time, the Plan actuary reports indicate that there is *one* retiree or beneficiary receiving benefits in the Pension Plan. Apparently, with an annual benefit of $228,355. Again, upon information and belief all of this money was funneled to Defendants.

31. For the plan year ending September 30, 2017, assets declined further to $1,238,886 after benefit payments of $210,938 to a single retiree, investment income of $10,273, and no contributions. Again, upon information and belief, all of this money was taken by Defendants.

32. Upon information and belief, the majority of the benefits paid by the Pension Plan were paid to Alan Zwillinger (or possibly his wife, Carol Zwillinger). Alan Zwillinger is using the Pension Fund for his sole benefit and to the detriment of the other Pension Plan participants and beneficiaries.

33. According to the Pension Plan's next most recent Department of Labor 5500 disclosure, submitted in July 2015, but for the period ending September 30, 2014, the Pension Plan had $1,890,506 of assets under management at the beginning of the fiscal year and only $1,730,766 of assets at the end of the year. As such the Pension Plan declined $159,740 in value over the year. Again, the majority of the benefits paid by the Pension Plan were paid to Alan Zwillinger (or possibly his wife, Carol Zwillinger). Alan Zwillinger is using the Pension Fund for his sole benefit and to the detriment of the other Pension Plan  participants and beneficiaries.

34. According the Pension Plan's Department of Labor 5500 disclosures, the Pension Plan's assets have been declining every year since 2011.

35. When Plaintiffs finally obtained a copy of the Pension Plan's SPD (in 2019), they noticed that many of Defendants' willful violations of ERISA are memorialized in the SPD itself.

36. ERISA allows only actual employees of a company to participant in a company's defined benefit plan. The SPD has even more stringent eligibility requirements. Employees must be at least 21 years old and have worked a minimum of 1000 hours in the prior Pension Plan year to be eligible. The SPD, on page 3, identifies "key employees" of Westco Chemicals who are eligible to receive virtually all of the Pension Plan benefits.

37. But many of the employees identified in the SPD were never employees of Westco Chemicals. For instance, David Wohlhgemuth is identified as an employee of the company and entitled to receive a retirement benefit equal to .05% of his "AMC" which does not appear to be defined anywhere in the SPD (but probably refers to "average monthly compensation" as defined in Section 1.9 in Plan document). However, Wohlhgemuth was *never* employed by Westco Chemicals and, therefore, never eligible to participate in the Pension Plan. He was the attorney who represented Westco Chemicals in the lawsuit that generated the settlement award that Defendants

1   used to initially fund the Pension Plan. Upon information and belief, Wohlhgemuth

2   never received any actual pension benefits. That was by design. Defendants' wanted to

3   keep all the money that funded the Pension Plan for themselves. In the alternative, if

4   Wohlhgemuth did receive pension benefits, that would also violate ERISA as he was

5   never an employee of Westco Chemicals and would indicate that Defendants were

6   using Pension Plan assets to cover personal or corporate expenses. By using strawmen

7   or others that did not know about the Pension Plan or would otherwise never be

8   eligible for benefits, or providing benefits to non-employees who Defendants owed

9   money, Defendants were able to keep and use all the assets in the Pension Plan for

10  themselves, or for their own use.

11      38. Likewise, Florence Lent is identified in the SPD as a key employee eligible

12  to receive pension benefits at .05% of her "AMC," which probably means Average

13  Monthly Compensation as defined in Section 1.9 of the Pension Plan but does not

14  appear to be defined anywhere in the SPD. Florence Lent is nearly 100 years old. She

15  is the *mother-in-law* of Alan Zwillinger and the *grandmother* of Steven Zwillinger.

16  She was never an employee of Westco Chemicals during the relevant period.

17      39. Carol Zwillinger is also identified as a key employee eligible to receive

18  pension benefits at 5.5% of her "AMC". Carol Zwillinger is Alan Zwillinger's *wife*

19  and Steven Zwillinger's *mother*. She was never an employee of Westco Chemicals

20  who qualified to receive benefits from the Pension Plan.

21      40. Felecia Fallas is identified as a key employee entitled to receive pension

22  benefits of .05% of her AMC. Felecia Fallas is Alan Zwillinger's *daughter* and Steven

23  Zwillinger's *sister*. She was never an employee during the relevant time period of

24  Westco Chemicals who qualified to receive benefits from the Pension Plan.

25      41. Adrian Holguin is identified as a key employee entitled to receive  pension

26  benefits of 5.5% of his AMC. Adrian Holguin only worked for Westco Chemicals for a

27

1  few months as a teenager and at a pay rate of $10 per hour. He never qualified to

2  receive pension benefits.  He was used by the Defendants as a strawman as well.

3      42. The Plan in Section 5.1(a) and the SPD provide that Alan Zwillinger and his

4  wife Carol Zwillinger, along with Jennifer Anderson, Gabriel Navarro and Adrian

5  Holguin (Group 1) each earn a monthly pension equal 5.5% of their AMC for each

6  year of service (not to exceed 12 years)  Participants in Group 2, a second designated

7  group of nine individuals, Steven Zwillinger, Felicia Fallas, Florence Lent, Joseph

8  Fallas, Seta Baghdasaryan, Juan Figueroa, Gina Pambuckchyan, Doreen Nelson and

9  David Wohlgemuth earn a monthly pension at the rate of .05% of their AMC for each

10  year of service.   Every other eligible employee (Group 3) earns a monthly pension

11  benefit equal to only .01% of their AMC for each year of Plan Service; that is, one

12  one-hundredth of one percent, or one basis point. So even if an employee were to

13  discover the Pension Plan and make a claim for pension benefits, the SPD provides

14  that they would only receive .01% of their AMC – this results in a benefit of close to

15  nothing, while Alan Zwillinger and his spouse collectively receive 11%.

16      43. To put these numbers in perspective, if Alan Zwillinger's AMC was

17  $10,000 ($120,000 annual salary), he would earn a monthly pension benefit of $550

18  for each year Pension Plan service (but not more than 12). Since the Plan was

19  established in 2005, through 2017 (assuming no change in salary), his monthly pension

20  benefit would be $6,600. In contrast, a participant in Group 3 with AMC of $5,000

21  ($60,000 annual salary) with the same 12 years of service, would have earned a

22  monthly pension benefit of $6. Even a participant in Group 2 with $5,000 in monthly

23  compensation and would have earned a benefit of only $30 per month after twelve

24  years of service.

25      44. In the face of this shocking disparity in benefit accruals, Section 5.1(a) goes

26  on to state "The Employer must ensure that the benefit formula described by this

27  subsection continues to provide meaningful benefits within the meaning of Code

Section 401 (a)(26)." The benefit accruals described in the preceding paragraph for Group 2 and Group 3 participants is clearly not "meaningful" as required by applicable Treasury Regulations.

45. It appears based on the Pension Plan's most recent annual reports that the only meaningful pension benefits being paid are being paid to Alan Zwillinger and his wife. Again, this was by design. Defendants are using the Pension Plan not to provide genuine pensions for workers, but to enrich themselves and avoid paying taxes that would otherwise have been owed on the money used to initially fund the Pension Plan.

46. In addition, importantly, the Pension Plan's most recent disclosures show the assets in the Pension Plan are not earning any income. That is, it appears Defendants have either placed the Pension Plan's assets in a non-interest bearing account – which would be a breach of the duty of prudence, or Defendants have invested the Pension Plan's assets and are earning income on the investments but are keeping the income for themselves, which would be a breach of the duty of prudence and the duty of loyalty. In either scenario, Defendants are breaching ERISA duties and directly harming the Pension Plan's participants.

47. The level of misfeasance and malfeasance with respect to the funding of the Pension Plan and the management for Plan assets dramatically affects the funding status of the Plan and clearly threatens the prospects the Pension Plan will be adequately funded at the time Plaintiffs and participants become eligible to commence pension benefits.

48. The Pension Plan is a "top-heavy" plan. There are exacting rules and requirements for top-heavy plans. These rules are found in Section 416 of the Internal Revenue Code.

49. The top-heavy rules are designed to ensure that lower paid employees receive at least a minimum benefit in plans where most of the assets are attributable to the benefits of higher paid employees (referred to as "key employees"). Generally,

1  when a plan is top-heavy, the employer (here Westco Chemicals), must provide lower

2  paid employees with a minimum pension benefit at the plan's normal retirement age,

3  equal to 3% of pay per year of plan participation, up to 10 years maximum. So, if a

4  participant works for 10 years, their minimum benefit would be 30% payable for their

5  lifetime.

6      50. The top-heavy minimum contribution is due with respect to the non-key

7  employees by the employer's tax filing due date, plus extensions for deductibility

8  purposes.

9      51. A top-heavy violation may cause a plan to become disqualified.

10  Disqualification is a draconian result. A disqualification usually results in the death of

11  a plan and immediate adverse tax consequences to the employer and employees in the

12  plan.

13     52. Defendants SPD and administration of the Pension Plan does not account for

14  the minimum top-heavy benefit. Instead of paying 3%, Defendants, upon information

15  and belief, pay nothing to anyone except Alan Zwillinger and his spouse. In the

16  unlikely event that an employee claims pension benefits, Defendants then provide the

17  employee with a pension benefit of only .01%, or one one-hundredth of one percent.

18  Accordingly, all of the Pension Plan participants who have received pension benefits

19  from Defendants, have suffered an injury because they received no benefits, or were

20  not paid the minimum pension benefits due to them under the law.

21     53. All of the Pension Plan participants who have not yet received pension

22  benefits are in seriously danger of not ever receiving benefits because the current

23  retirement benefit formula in the SPD provides Alan Zwillinger and his spouse with

24  roughly $150,000 per year. Upon information and belief, the Pension Plan has roughly

25  $1.2 million in assets. At the current rate, virtually all of the assets used to initially

26  fund the Pension Plan and virtually all of the assets remaining in the Pension Plan will

27  have transferred to Alan Zwillinger and his wife in roughly 6 years.

54. Defendants have also failed, since the Pension Plan's inception, to make legally required contributions to the Pension Plan. When a pension plan is top-heavy, employers must make annual contributions to the Plan of at least 3% of all non-key employee's annual compensation. The minimum contributions must be made on an annual basis. Defendants here have failed to ever make the legally required 3% contribution to the Pension Plan.

55. Defendants amended the Pension Plan on December 26, 2017 to freeze benefit accruals; meaning that no eligible employee would receive any additional benefit under the Pension Plan in excess of the benefit accrued as of the date of that amendment (the 2017 Amendment). The 2017 amendment indicates clearly, however, that Defendants believed they had frozen benefit accruals by adoption of an amendment to the Pension Plan in 2010. But Defendants apparently realized in 2017 that the earlier attempt to freeze benefit accruals in 2010 was not effective, either because the amendment was not properly adopted or because of the failure to notify all participants in the Pension Plan of the amendment freezing benefit accruals. A plan amendment that is not adopted in compliance with a plan's written amendment procedures is ineffective. *See Schoonejongen v. Curtiss–Wright*, 514 U.S. 73 (1995). Since it is clear that Defendants believed they had frozen benefit accruals in 2010, it is equally clear that they did not fund any of the benefits accrued between the date of the ineffective amendment in 2010 and the actual amendment freezing benefit accruals in December 2017, since they believed that no benefits accrued during that period.

56. The Pension Plan's Annual Report on Form 5500 prove this to be true. The actuarial information provided on Schedule SB to the 5500 reports, among other things, the Plan's "normal cost." Normal cost essentially represents the present value of benefits accrued, or expected to accrue, during the year. The Plan's normal cost for each of the 2011, 2012, 2013, and 2014 plan years was zero, meaning that no, benefits accrued during those years. The Schedule SB for the 2015 plan year shows a normal

cost of $57,290, but that Annual Report was not filed until June 10, 2019, long after Defendants realized that the Pension Plan was not frozen. Likewise, the Schedule SB for the 2016 5500, filed the same day as the 2015 5500, reports a normal cost of $66,839.

57. Plaintiffs are bringing claims relating to the Pension Plan in a derivative capacity, to recover injuries to the Pension Plan caused by Defendants' breaches of their fiduciary duties, and on behalf of all similarly situated individuals entitled to accrued future benefits that have been jeopardized by Defendants' conduct.

58. Defendants are not making legally required disclosures about the Pension Plan. Defendants did not make legally required contributions to the Pension Plan. The Pension Plan is underfunded with respect to all benefits required by the Internal Revenue Code and ERISA to be have accrued under the Pension Plan. Defendants are not investing the assets of the Pension Plan at all. The money is being held in cash. Further, Defendants do not have actuary reports for the Pension Plan. Defendant Alan Zwillinger appears to be withdrawing all, or almost all, of the money in the Pension Plan. The Pension Plan exists only to benefit Alan Zwillinger and his wife. The Pension Plan will not be able to satisfy existing liabilities. Defendants have failed and are failing to provide Pension Plan participants and beneficiaries with legally required minimum pension benefits.

59. ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Pension Plan. 29 U.S.C. § 1104(a)(1) states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) For the exclusive purpose of
>
> (i) Providing benefits to participants and their beneficiaries; and

(ii) Defraying reasonable expenses of administering the plan;

(B) With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

60. The ERISA duties of loyalty and prudence are among "the highest known to the law" and require fiduciaries to have an eye single to the interests of plan participants and beneficiaries. *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).

61. ERISA fiduciaries must: (a) act solely in the interest of plan participants and their beneficiaries and with the exclusive purpose of providing benefits to them; (b) carry out their duties prudently; and (c) follow the plan documents (unless inconsistent with ERISA); and (d) ensure that the plan complies with federal rules and regulations.

62. ERISA also "imposes a 'prudent person' standard by which to measure fiduciaries' conduct with respect to plan administration and assets. *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014). .

## CLASS ACTION ALLEGATIONS

63. Plaintiffs bring this action on behalf of the Pension Plan and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

64. Plaintiffs seek to certify, and to be appointed as representative of, the following class ("Class"):

All participants and beneficiaries of the Pension Plan who were/are eligible for pension benefits. Excluded from the Class are Defendants and any Westco Chemicals employees having or exercising fiduciary responsibility with respect to the Pension Plan.

65. This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

66. Numerosity: The Class is so numerous that joinder of all its members is impracticable. The Pension Plan had more than 50 participants and beneficiaries

1    during the applicable period.

2       67. <u>Typicality</u>: Plaintiff's claims are typical of the Class members' claims. Like

3 other Class members, Plaintiffs are participants and/or beneficiaries in the Plan, who

4 have suffered injuries as a result of Defendants' ERISA violations. Defendants treated

5 Plaintiffs consistently with other Class members with regard to the Pension Plan.

6 Defendants' disloyal and imprudent decisions and self-dealing affected all of the

7 Pension Plan's participants similarly.

8       68. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the

9 Class, as their interests are aligned with the Class that they seek to represent. Plaintiffs

10 have retained counsel experienced in complex ERISA and class action litigation.

11 Plaintiffs do not have any conflict of interest with any Class members that would

12 impair or impede their ability to represent such Class members.

13       69. <u>Commonality</u>: Common questions of law and fact exist as to all Class

14 members and predominate over any questions solely affecting individual Class

15 members, including but not limited to:

16         A. Whether Defendants breached duties of prudence by failing to provide

17           participants with timely notice of the Pension Plan's existence, rules,

18           investments, earnings, annual disclosures, and related documents.

19         B. Whether Defendants breached duties of prudence and loyalty by co-

20           mingling Pension Plan assets with their own personal assets.

21         C. Whether Defendants are self-dealing with the Pension Plan's assets.

22         D. Whether Defendants breached duties of loyalty and prudence by

23           having failed to make minimum financial contributions to the Pension

24           Plan as required law.

25         E. Whether Defendants breached duties of loyalty and prudence by

26           failing to provide Pension Plan participants with minimum guaranteed

27           benefits.

F. Whether Defendants willfully violated ERISA by intentionally designating non-employees as Pension Plan participants and beneficiaries.

G. Whether Defendants ought to be removed as Pension Plan fiduciaries.

H. The proper measure of monetary relief.

I. The proper form of equitable and injunctive relief.

70. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class. Separate lawsuits would establish incompatible standards to govern Defendants' conduct.

71. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Pension Plan participants, as a practical matter, would be dispositive of the interests of other Pension Plan participants or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court such as removal of a Plan fiduciary would be dispositive of non-party participants' interests. The accounting and restoration of the property of the Plans that would be required under 29 U.S.C. §§ 1109 and 1132 would be similarly dispositive of the interests of other Plan participants.

72. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint has applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claim is relatively small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any

similar claims brought against Defendants by any Class member on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

## COUNT I
### Breach of Duty of Prudence
### 29 U.S.C. § 1104(a)(1)(B)

73. Plaintiffs repeat and re-allege each of the allegations in the foregoing paragraphs as if fully set forth herein.

74. At all relevant times, Defendants acted as fiduciaries within the meaning of ERISA by exercising authority and control with respect to the management of the Pension Plan.

75. ERISA requires a plan fiduciary to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

76. The prudent person standard asks whether the plan fiduciaries employed appropriate methods to investigate and the merits of investments and the structure of a plan's investment portfolio. Fiduciaries' prudence is measured against an objective standard and their own lack of familiarity with investments is no excuse for failing to act with the care, skill prudence, and diligence required under the circumstances then prevailing.

77. As described throughout this Complaint, the Defendants breached their fiduciary duties of prudence in the following ways:

A. Failing to hire a professional investment advisor to oversee the Pension Plan's investments and investment strategy

B. Acting as the investment advisor for the Pension Plan.

C. Failing to invest the Pension Plan's assets with prudence.

D. Failing to retain professional administrative services to make required disclosures to the Department of Labor and to the Pension Plan's participants, and to ensure Defendants' contributions to participants' accounts were done correctly.

E. Acting as the recordkeeper for the Plans without having the requisite expertise to perform such function.

F. Failing to make required disclosures to the Department of Labor and to participants and beneficiaries in a timely basis.

G. Failing to design and implement a process to ensure that ERISA's requirements were/are satisfied in connection with the Pension Plan's operation, administration, and performance.

H. Comingling the Pension Plans' assets with assets and/or accounts of parties in interest.

I. Failing to make statutorily required contributions to participant accounts.

J. Failing to provide Pension Plan participants and beneficiaries with minimum guaranteed benefits in the amounts as required by law.

K. Failing to provide Pension Plan participants and beneficiaries with minimum guaranteed benefits in the time period as required by law.

L. Designating non-employees as eligible to receive Pension Plan benefits.

M. Paying Pension Fund benefits to non-employees or others not eligible to receive benefits under the law.

N. Creating and using a retirement benefit formula that does not comply with existing law and benefits Defendants to the detriment of Plaintiffs and legitimate Pension Plan participants and beneficiaries.

78. No prudent fiduciary would have administered the Pension Fund the way Defendants have here.

79. Thus, Defendants breached their duties of prudence to the Plans under 29 U.S.C. § 1104(a)(1)(B).

80. As a direct and proximate result of these breaches, the Pension Plan and Plaintiffs and the Pension Plan's other participants and beneficiaries, have lost money and will continue to lose money unless redress is obtained in this lawsuit.

81. Pursuant to 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Defendants are liable to restore all losses suffered by the Pension Plan caused by their breach of fiduciary duties.

## COUNT II
### Breach of Duty of Loyalty
### 29 U.S. § 1104(a)(1)(A)

82. Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

83. ERISA's duty of loyalty requires fiduciaries to act solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries.

84. As described throughout this Complaint Defendants breached their fiduciary duties of loyalty in the following ways:

A. Administering the Pension Plan for their own personal benefit and to the detriment of participants, by following an investment strategy that was designed satisfy the tax and retirement needs of the Defendants that simultaneously denied the Plaintiffs and all other participants the

opportunity to benefit from one of the longest periods of sustained growth of the US economy and equity markets in history.

B. Failing to hire investment professionals to help administer the Pension Plan because Alan and Steven Zwillinger wanted to control all of the Pension Plan's assets and to use them for their benefit.

C. Not investing Pension Plan assets because Alan and Steven Zwillinger personally have other retirement resources and are not concerned about returns on the Pension Plan's assets.

D. Failing to make required annual contributions to Pension Plan accounts and instead diverting this money to illegal or disallowed uses that inured to their personal benefit.

E. Operating the Pension Fund to primarily benefit Alan Zwillinger.

F. Comingling the Pension Plan's assets with Defendants' assets.

G. Keeping for themselves money of participants in the Plans who ceased working with Westco and were unaware they had retirement plan account balances.

H. Using Pension Plan assets for Defendants' personal use.

I. Creating and using a retirement benefit formula that does not comply with existing law and benefits Defendants to the detriment of Plaintiffs and legitimate Pension Plan participants and beneficiaries.

85. Thus, Defendants breached their duties of loyalty to the Plans under 29 U.S.C. § 1104(a)(1)(A).

86. As a direct and proximate result of these breaches, the Pension Plan and Plaintiffs and the Pension Plan's other participants and beneficiaries, lost money and will continue to lose money unless redress is obtained in this lawsuit.

87. Pursuant to 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Defendants are liable to restore all losses suffered by the Plans due to their breach of fiduciary duties.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

A. Certify this action as a class action as stated here and appoint Plaintiffs' counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

B. Declare Defendants breached their fiduciary duties to Plaintiffs and the Class in the manner described in the Complaint;

C. Declare that the Plans assets inured to the benefit of Defendants in violation of 29 U.S.C. § 1103;

D. Order Defendants to personally make good to the Pension Plan all losses that the Pension Plan incurred as a result of the breaches of fiduciary duties and self-dealing described above and to restore the Pension Plan to the position it would have been in but for such breaches and self-dealing;

E. Enjoin Defendants from further violations of their fiduciary responsibilities, obligations, and duties;

F. Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate; and

G. Award Plaintiffs and the Class reasonable attorney's fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the Class.

DATED: February 28, 2020                    Respectfully submitted,

/s/

Shoham J. Solouki (SBN 278538)
SOLOUKI SAVOY LLP
316 West 2nd Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 814-4940
Facsimile: (213) 814-2550

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Michael C. McKay (Pro hac vice forthcoming)
MCKAY LAW, LLC
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Email: mckay@mckay.law

*Attorneys for Plaintiffs and the proposed Class*