O

# United States District Court
# Central District of California

| | |
|---|---|
| MERRY RUSSITTI DIAZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WESTCO CHEMICALS, INC., et al. <br><br> Defendants. | Case № 2:20-cv-2070-ODW (AGRx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [52]** |

## I. INTRODUCTION

Plaintiffs Merry Russitti Diaz and Kater Perez bring suit individually and on behalf of a certified class under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, against Defendants Westco Chemicals, Inc.; Alan Zwillinger; and Steven Zwillinger (all together, "Westco") for harm arising from Westco's mismanagement of a defined benefit pension plan ("Plan") in which Plaintiffs were participants. Defendants now move for summary judgment. (Mot. Summ. J. ("Motion" or "Mot."), ECF No. 52.) After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the following reasons, the Court **GRANTS** Westco's Motion.

## II. PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

In satisfaction of its obligation under Central District Local Rule 56-1 and this Court's Scheduling and Case Management Order, Westco filed along with its Motion a Statement of Uncontroverted Facts and Conclusions of Law ("SUF"). (SUF, ECF No. 52-1.) Then, Plaintiffs, as part of their opposition to Westco's Motion, filed a Statement of Genuine Disputes ("SGI"). (SGI, ECF No. 61-3.) Plaintiffs' SGI does not track or refer to the assertions in the SUF in any way; instead, the SGI merely sets forth a series of issues for trial, stated in an issue-statement-type format. For example, item number 14 of the SGI reads, "Whether the Plan is funded as required by the operative laws, rules, and regulations."

This Court's Scheduling and Case Management Order sets forth instructions parties must follow in submitting SUFs and SGIs. An SGI must be filed in two-column format and must track the movant's statements in the SUF one by one, designating each as disputed or undisputed. (Scheduling & Case Management Order 6, ECF No. 44.) Moreover, and regardless of this Court's specific instructions, Central District Local Rule 56-3 provides:

> In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence filed in opposition to the motion.

Under these rules, Plaintiffs' failure to address Westco's assertions in the latter's SUF functions as a concession that the facts in the SUF are undisputed for the purpose of this Motion. *Lux EAP, LLC v. Bruner*, No. CV 17-1359 DMG (SPx), 2022 WL 2168877, at *2 n.3 (C.D. Cal. Apr. 11, 2022) (taking all facts in defendants' SUF as undisputed for the purposes of summary judgment where plaintiff filed an SGI without responding to any of the defendant's assertions in the SUF). Thus, the undisputed facts are as follows.

### III. FACTUAL BACKGROUND

Westco is a business based in North Hollywood, California engaged in supplying food, nutritional, industrial, pharmaceutical, and personal care ingredients. (SUF 1.) Westco is 100% owned by its founder, Alan Zwillinger, along with his wife Carole Zwillinger and his adult children Steven Zwillinger and Felicia Fallas. (*Id.*)

Effective October 1, 2005, Westco adopted the Plan, a defined benefit pension plan, for the benefit of its eligible employees.[1] (SUF 2.) The original 2005 Plan document created three groups of Plan participants and defined the benefits payable to each group:

- Group 1 consisted of Alan Zwillinger, Carole Zwillinger, and three other individuals. Group 1's benefit was 5.5% of the respective individual's average compensation for each year of service, up to a maximum of "twelve (18) [sic] years."
- Group 2 included Steven Zwillinger, Felicia Fallas, and seven other individuals. Group 2's benefit was 0.5% of the individual's average compensation for each year of service.
- Group 3 included all other eligible employees not in Groups 1 or 2. Group 3's benefit was 0.1% of the individual's average compensation for each year of service.

(SUF 3.) The Plan document was restated effective October 1, 2011. (SUF 4.) The restated Plan document corrected the typographical error with respect to Group 1 and clarified that Group 1's benefit accruals were limited to twelve years of service. (*Id.*)

However, the restated Plan document included errors of its own. In particular, the document reflected that the benefits for Groups 2 and 3 would annually accrue at

---

[1] "In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020). The benefit to which defined benefit plan participants are entitled is constant "regardless of the plan's value at any one moment and regardless of the investment decisions of the plan's fiduciaries." *Id.*

rates of .05% and .01%, respectively, of their average compensation, rather than at rates of 0.5% and 0.1%, as set forth in the original Plan document.[2]  (Reply 10–11, ECF No. 62; SUF 5.)

For several years before 2017, Westco engaged a third-party administrator named Paul Harder to provide services for the Plan.  (SUF 6.)  In 2010, Westco chose to freeze all further benefit accruals under the Plan, and based on Harder's representations at the time, Steven Zwillinger believed that the necessary steps to freeze the plan had been taken.  (SUF 8–9.)

Westco's relationship with Harder deteriorated, and on July 19, 2017, having lost contact altogether with Harder, Westco engaged a new plan administration firm: Goldberg, Swedelson & Associates, Inc. ("Goldberg Firm").  (SUF 6.)  Westco learned that the Plan had not been properly frozen in 2010.  (SUF 10.)  To fix the problem, Westco adopted an amendment to the Plan, effective December 26, 2017, freezing the plan by locking out new participants and contributions and stopping the accrual of benefits.  (SUF 11.)  Westco informed Plan participants of this freeze.  (SUF 12–13.)

On August 19, 2019, Plaintiff Diaz applied for benefits under the Plan. (SUF 15.)  In September 2019, Diaz began receiving monthly benefit payments in the amount of $124.78, pursuant to the terms of the Plan.[3]  (SUF 16.)

Around the time Westco engaged the Goldberg Firm, it also engaged a law firm, the Ferenczy Benefits Law Center ("Ferenczy Firm"), to assist it in identifying operational and other issues that arose during Harder's tenure.  (SUF 7.)  Many of the issues the Ferenczy Firm identified related to the Plan's qualification for favorable tax treatment under Internal Revenue Code ("IRC") § 401, 26 U.S.C. § 401, and related statutes.  (Mot. 5–6.)  These statutes impose a series of requirements a plan administrator must meet in order for the plan to qualify for the favorable tax

---

[2] Westco eventually corrected these errors by way of a 2021 Plan amendment.  (Reply 10–11.)

[3] Diaz is not a member of Group 1 or Group 2 and is therefore a member of Group 3.  (See Compl. ¶ 42, ECF No. 1.)

treatment. When Westco learned of the Plan's many failures with respect to these requirements, it began working with the IRS, first under its Voluntary Closing Assistance Program ("VCAP"), and then under the more routine Voluntary Correction Program ("VCP"), to address the failures so that the Plan could continue to enjoy tax-favored status. (SUF 18–20.)

Westco's failed attempt to freeze the Plan in 2010, coupled with its having acted from 2010 to 2017 as if the plan were indeed frozen, created two main problems. First, because the Plan was not properly frozen, participant benefits continued to accrue. (SUF 21.) Second, because Westco was not properly funding the Plan throughout this time, the Plan failed with respect to its Adjusted Funding Target Attainment Percentage ("AFTAP").[4] (SUF 22.) To solve these problems, Westco decided to take the following actions: (1) for Westco's owner-employees, freeze benefit accruals as of October 1, 2010; and (2) for all other employees, deem benefits to have continued to accrue through the actual freeze date of December 27, 2017. (SUF 23.)

Westco, the Goldberg Firm, and the Ferenczy Firm discovered and corrected additional errors with respect to the Plan's compliance with IRC § 401(a) and related statutes:

- The plan failed to comply with IRC § 401(a)(26) and related Treasury Regulation 26 C.F.R. § 1.401(a)(26)-3(c)(2), which provide that defined benefit plans must benefit a certain minimum number of employees as part of the broader requirement that plans provide employees with a "meaningful benefit."

---

[4] A defined benefit plan's AFTAP may generally be described as its assets divided by its liabilities. The target AFTAP for defined benefit plans "is 100%, meaning that the actuarial value of the plan's assets equals the present value of the plan's benefit obligations. If the assets exceed the obligations, the plan is overfunded. If the present value of the obligations exceed the assets, the plan is underfunded." *Palmason v. Weyerhauser Co.*, No. C11-0695RSL, 2013 WL 4511361, at *8 (W.D. Wash. Aug. 23, 2013). The AFTAP is particularly suitable for determining whether plan participants' "future benefits are in danger, an inherently long-term proposition." *Id.*

(SUF 24.) To come into compliance, Westco added five non-highly compensated employees to Group 2. (SUF 25.)

- From 2012 to 2016, due to the 2010 freeze having been improperly executed, the required minimum distributions paid to Alan Zwillinger, Carole Zwillinger, and Florence Lent exceeded the amounts allowable under IRC § 401(a)(9). (SUF 26.) To come into compliance, Westco deposited into the Plan an amount equal to the overpayments. (SUF 27.)
- The plan was top-heavy during certain years.[5] (SUF 42.) "If a plan is determined to be top-heavy, it must meet vesting and minimum benefit/ contribution requirements" under IRC § 416(a), 26 U.S.C. § 416, in order to continue to qualify for favorable tax treatment. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 696 (6th Cir. 2005). Westco funded additional contributions in order to bring the Plan into compliance for its top-heavy years. (SUF 41–42.)

Following these and other corrections, on May 13, 2021, the IRS issued a signed compliance statement approving Westco's proposed remedial actions, thereby resolving the operational errors that came about during Harder's tenure. (SUF 31.)

As of the plan year ending September 30, 2021, the present value of benefits owed by the Plan to all participants is $1,963,703, (SUF 17), and presently, the Plan's AFTAP is 95.13%, (SUF 35). Moreover, Westco is current in its obligations to its creditors, and is not in any risk of defaulting on any of its obligations. (SUF 34.) Therefore, if the Plan were to be terminated immediately, Westco has the means to fund the Plan sufficiently to pay 100% of the present value of accrued benefits. (*Id.*)

---

[5] A defined benefit plan is top-heavy if the present value of the accrued benefits under the plan for the key employees exceeds 60% of the present value of accrued benefits of the plan for all employees. 26 U.S.C. § 416(g)(1)(A)(i). The purpose of the rules related to top-heavy plans is "to protect non-key employees by ensuring that a minimum amount of the assets from an employer's pension plan are dedicated to them." *Penny/Ohlmann/Nieman*, 399 F.3d at 696.

## IV. PROCEDURAL BACKGROUND

On February 25, 2019, the plaintiff in an earlier-filed case, *Draney v. Westco Chemicals, Inc. et al.*, No. 2:19-cv-1405-ODW (AGRx) ("*Draney*"), filed a Complaint against Westco. Compl., *Draney*, ECF No. 1. That Complaint encompassed allegations relating to both the defined benefit pension plan currently at issue and a separate Westco 401(k) profit sharing plan. Westco moved to dismiss, and the Court granted the motion, dismissing Draney's claims to the extent they encompassed the defined benefit plan now at issue here. Order Granting Mot. Dismiss Draney First Am. Compl., *Draney*, ECF No. 29.

On March 3, 2020, Diaz and Perez, represented by the same attorneys representing Draney, filed the Complaint in the present matter, reasserting the dismissed claims from *Draney* as their own individual and class claims in this case. (Compl.) Thus, the 401(k) Plan is the sole plan remaining at issue in *Draney*, and the defined benefit pension plan is the sole plan at issue in the present case.

Thereafter, in the present matter, Westco moved to dismiss the Complaint on the grounds that Diaz and Perez lacked standing and failed to state a claim. (Mot. Dismiss, ECF No. 24.) On September 1, 2020, the Court denied the Motion, finding Plaintiffs had standing based on their allegations that Westco's ERISA violations put the Plan at risk of default. The Court found Plaintiffs had otherwise stated sufficient claims. (Order Den. Mot. Dismiss, ECF No. 39.)

Some time later, Plaintiffs moved, unopposed, to certify a class of Plan participants. (Mot. Certify, ECF No. 46; Notice Non-Opp'n, ECF No. 47.) The Court granted the Motion, certifying a class of all participants in the Plan whose Plan account had a balance at any time on or after March 3, 2014. (Order Granting Mot. Certify, ECF No. 48.) Westco's Motion for Summary Judgment followed.

## V. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where the resolution of that fact "might affect the outcome of the suit under the governing law," and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, and the moving party may meet this burden with arguments or evidence or both. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Franciscan Ceramics*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted). Provided the moving party has satisfied its burden, the court should grant summary judgment against a party who fails to present evidence establishing an essential element of its claim or defense when that party will ultimately bear the burden of proof on that claim or defense at trial. *See Celotex*, 477 U.S. at 322.

In ruling on summary judgment motions, courts draw all reasonable inferences in the light most favorable to the nonmoving party, refraining from making credibility determinations or weighing conflicting evidence. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Hous. Rts. Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1183 (C.D. Cal. 2004).

## VI. DISCUSSION

Plaintiffs assert two counts against Westco, for breach of its duty of prudence under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), and breach of its duty of loyalty under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A). These code sections

define the duty of prudence and the duty of loyalty, respectively, and a separate code section, ERISA § 409(a), 29 U.S.C. § 1109(a), holds fiduciaries "personally liable to make good to such plan any losses to the plan resulting from each such breach." *See LaRue v. DeWolff, Boberg, & Assocs., Inc.*, 552 U.S. 248, 252 (2008). In turn, ERISA § 502(a), 29 U.S.C. § 1132, makes that liability enforceable by describing who may bring a civil action and for what. Key here is ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which expressly allows plan participants to sue for "appropriate relief" for breaches of fiduciary duty under ERISA § 409. This section "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account," but it "does not provide a remedy for individual injuries distinct from plan injuries." *LaRue*, 552 U.S. at 256.

One of Plaintiffs' key contentions is that Westco failed to ensure the Plan provided them with "meaningful benefits" under IRC § 401(a)(26) and 26 C.F.R. § 1.401(a)(26)-3(c)(2). (Opp'n 9–11, ECF No. 61.) Plaintiffs argue that they are both statutorily and contractually entitled to meaningful benefits, and they are accordingly entitled to damages that cover the difference between the benefits they are actually receiving with benefits that are meaningful. (*See id.*)

**A.    Standing**

Westco's primary argument is that Plaintiffs lack standing because the plan is a defined benefit plan and is not at imminent risk of default, and accordingly, Plaintiffs are not at risk of losing benefits and therefore have not suffered injury in fact. (Mot. 12–14.) Based on Westco's evidence and the undisputed facts, this argument has merit.

"A plan participant suing under ERISA must establish both statutory standing and constitutional standing, meaning the plan participant must identify a statutory endorsement of the action and assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty." *Slack v. Int'l Union of Operating Eng'rs*, No. C-13-5001 EMC, 2014 WL 4090383, at *11 (N.D. Cal. Aug. 19, 2014) (quoting

*Kendall v. Emp. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)). Westco does not challenge Plaintiffs' statutory standing. Nevertheless, Plaintiffs must still meet the Article III standing requirements—injury in fact, causation, and redressability. *Id.*; *cf. Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (rejecting notion that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"). This case concerns the injury in fact requirement; to establish injury in fact, plaintiffs must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (internal quotation marks omitted).

The Supreme Court's opinion in *Thole* is directly applicable and controlling on the issue of injury in fact in the present matter. In *Thole*, the plaintiffs, participants in a defined benefit pension plan, sued the plan administrator for breaches of the duties of loyalty and prudence with respect to the plan. 140 S. Ct. at 1618. However, the plaintiffs had not sustained any monetary injury; despite the alleged breaches, the plan was sufficiently funded, and the participants never failed to receive the fixed monthly benefits to which they were entitled. *Id.* The Court concluded that "under ordinary Article III standing analysis, the plaintiffs lack Article III standing for a simple, commonsense reason: They have received all of their vested pension benefits so far, and they are legally entitled to receive the same monthly payments for the rest of their lives." *Id.* at 1623.

The facts of the present matter compel the same result. The Plan's AFTAP is over 95%. (SUF 35.) To the extent any of Westco's prior breaches and operational errors with respect to the Plan placed the Plan at any risk of default, those errors have been corrected such that they no longer pose any such risk. In short, Westco's undisputed evidence demonstrates that the plan is not currently at risk of any sort of default. (*See* SUF 34.)

Plaintiffs present no evidence suggesting otherwise. Plaintiffs do not in any way contend that the plan is currently underfunded. (*See generally* Opp'n; *see also* Decl. Michael Bilbe ("Bilbe Decl."), ECF No. 61-1.) Plaintiffs submit the expert declaration of their actuarial expert, Michael Bilbe,[6] but this declaration merely establishes that, *if* Westco were to come into full compliance with the "meaningful benefits" requirements of IRC § 401(a)(26) and 26 C.F.R. § 1.401(a)(26)-3(c)(2), the plan would be underfunded. It does not establish that the plan is currently underfunded in a way that provides Plaintiffs with Article III standing.

Because the Plan is a defined benefit plan and is not at risk of default, Plaintiffs have not suffered an injury in fact. *Thole*, 140 S. Ct. at 1623; *Spokeo*, 578 U.S. at 338–39. Therefore, Plaintiffs lack standing, and Westco's Motion is properly granted on this basis.

## B. Failure to Provide Meaningful Benefits

In their Opposition, Plaintiffs repeatedly emphasize that this case is not merely about whether the Plan is sufficiently funded to provide participants with the benefits promised but is instead more fundamentally about the sufficiency of the benefits themselves. According to Plaintiffs, "at the core of this lawsuit is Plaintiffs' contention that the Plan fails to provide Plan participants with 'meaningful benefits' as required by the law. That is what this case is really about. The Plan only provides material benefits to Defendants." (Opp'n 4.) Plaintiffs contend that the benefit accrual rate the Plan provides them (0.1% in most cases) fails to provide material benefits, leaving longtime Westco employee-participants with a paltry monthly benefit—$124.78 in Diaz's case, and significantly less for other employees. (*See*

---

[6] Westco submits objections to the Declarations of Michael Bilbe and Daniel Draney. (Objs. Bilbe Decl., ECF No. 62-1; Objs. Draney Decl., ECF No. 62-2.) However, Westco wins on this Motion even when all its well-formed evidentiary objections are overruled. Therefore, the Court need not rule on any of these objections and correspondingly **DENIES** them all **AS MOOT**. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006) (proceeding with rulings on evidentiary objections only where necessary).

Opp'n 10 (citing Decl. Alison J. Cohen Ex. 1 ("Participant Statements"), ECF No. 52-18).)

To address Plaintiffs' contention, it must first be clarified that the failure of a plan to provide "meaningful benefits" under IRC § 401(a)(26), without more, is not a substantive ERISA violation. As the Third Circuit noted, "[t]he mere fact that ERISA sets forth requirements for qualification of plans does not lead one to conclude that the failure of a plan to meet these requirements is a 'violation' of ERISA." *Trenton v. Scott Paper Co.*, 832 F.2d 806, 810 (3d Cir. 1987). A failure to provide "meaningful benefits" will result in a plan losing its tax-favored status; it does not, in and of itself, provide a plan participant with a civil cause of action.

Recognizing these points of law, Plaintiffs alleged in their Complaint certain language from section 5.1 of the 2011 restated Plan document providing that "[t]he Employer must ensure that the benefit formula described by this subsection continues to provide meaningful benefits within the meaning of Code Section 401(a)(26)." (Compl. ¶ 44; *see* Mot. 9.) Plaintiffs' theory, implied if not stated, is that this clause contractually obligated Westco to ensure that Plan benefits remained "meaningful" under the IRS's definition, and consequently, Westco breached its fiduciary duty to participants by failing to ensure that benefits remained "meaningful." In effect, Plaintiffs are making an alternative standing argument that their harm arises, not from Westco having failed to pay the benefits participants were promised, but instead from Westco's failure to promise them enough benefits in the first place to be meaningful under the terms of the Plan and applicable law. Plaintiffs argue that the gap between the benefits participants are being paid and the benefits to which they are contractually and legally entitled is the harm that gives them standing. (*See* Mot. 11.)

Plaintiffs' argument is flawed. Their theory, to whatever extent it is viable, is based on individual injuries, but the claims Plaintiffs presently assert are claims for breaches of fiduciary duty under ERISA § 502(a)(2), which "do[] not provide a remedy for individual injuries distinct from plan injuries." *LaRue*, 552 U.S. at 256.

As an initial matter, there is no doubt that Plaintiffs assert in the operative Complaint are claims for plan injury. Throughout the Complaint, Plaintiffs allege that they are "bringing claims relating to the Pension Plan in a derivative capacity, to recover injuries to the Pension Plan." (Compl. ¶ 57.) And under their two claims for breaches of fiduciary duty, they allege that "Defendants are liable to restore all losses suffered by the Pension Plan caused by their breach of fiduciary duties." (*Id.* ¶¶ 81, 87.) Plaintiffs do not assert claims for individual damages, under ERISA § 502(1)(a)(B) or otherwise.

In contrast, by way of their "meaningful benefits" theory, Plaintiffs are now arguing that Westco's breaches caused the Plan not to pay out enough money to Plaintiffs. Plaintiffs are not arguing that Westco's breaches diminished the value of the assets in the Plan itself or otherwise harmed the Plan. Nor could they; at the risk of stating the obvious, the Plan's failure to pay more money to Plaintiffs did not harm the Plan; if anything, it harmed Plaintiffs as individuals. This conflict between the claims as pleaded and the theory presently asserted makes summary judgment appropriate.

This is not a mere failure to cite the correct statute in the pleading; under *LaRue*, courts must respect "[t]he significance of the difference between a § 502(a)(1)(B) claim and one under § 502(a)(2)" because pursuing a claim under § 502(a)(1)(B) first requires exhaustion of administrative remedies, which is not a requirement under § 502(a)(2). 552 U.S. at 258–59. And more generally, where "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008); *Bullard v. Wastequip Mfg. Co.*, No. CV 14-01309 MMM (SSx), 2015 WL 12766467, at *12 (C.D. Cal. Apr. 14, 2015) (prohibiting party from defeating summary judgment by asserting oral contract theory of liability not alleged in the operative pleading).

Because the claims Plaintiffs pleaded "do[] not provide a remedy for individual injuries distinct from plan injuries," *LaRue*, 552 U.S. at 256, Plaintiffs cannot recover for not having received meaningful benefits, an individual injury by its nature. Plaintiffs' "meaningful benefits" theory does not give rise to a genuine issue of standing and therefore does not defeat Westco's Motion.

For these reasons, Westco is entitled to summary judgment. Its remaining arguments are moot.[7]

## VII. CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (ECF No. 52.) The Court hereby **VACATES** the Final Pretrial Conference, the trial, and all other pretrial dates and deadlines. The Court will issue Judgment consistent with this Order.

**IT IS SO ORDERED.**

August 18, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[7] Westco requests judicial notice of a document the Court does not rely on in reaching its disposition. (Req. Judicial Notice, ECF No. 53.) Accordingly, Westco's Request for Judicial Notice is **DENIED AS MOOT**.